UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

VICTORINO MENDEZ BENITEZ,

Petitioner,

v.

MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,

Respondents.

Case No.: 26cv5663-LL-BJW

**ORDER GRANTING AMENDEED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

[ECF No. 6]

Before the Court is Petitioner Victorino Mendez Benitez's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 6 ("Pet."). Respondents filed a Response in opposition to the Petition [ECF No. 7], and Petitioner filed a Traverse [ECF No. 8]. For the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner is a Mexican national who came to the United States in 2006. Pet. at 2. The Court incorporates the statement of facts as set forth in the Petition as set forth below.

> Mr. Mendez Benitez was born in Mexico. Exhibit A, Declaration of Victorino Mendez Benitez, at ¶ 1. In 2006, he entered the United States and began living with family in San Diego. *Id*. He worked a steady job and helped build his community church. *Id*. In 2018, Mr. Mendez Benitez's U.S. citizen wife

> submitted an I-130 Petition for Alien Relative on his behalf, which USCIS approved. *Id.* ¶ 2. In 2022, he self-filed for adjustment of status under VAWA. *Id.* He received a work permit and was complying with all the requirements for his application. *Id.* In August 2025, Mr. Mendez Benitez was placed in removal proceedings. *Id.* ¶ 3. He went to a hearing on September 29, 2025. *Id.* At the September 29, 2025, hearing, he and his attorney asked for more time to prepare. *Id.* The immigration judge (IJ) set a new hearing for February 3, 2026. *Id.* Mr. Mendez Benitez was permitted to go home and was not detained at that time. *Id.* Shortly after the September 29 hearing, Mr. Mendez Benitez received a notice in the mail saying that on October 17, 2025, he had to report to ICE for a document check. *Id.* ¶ 4. When Mr. Mendez Benitez went to the appointment, he was arrested. *Id.* ICE did not show him a warrant or give him any documents that explained why he was being arrested. *Id.* At the time, his VAWA petition was still pending. *Id.* On December 17, 2025, there was a removal hearing for Mr. Mendez Benitez. *Id.* ¶ 6. The judge found that he proved battery and extreme cruelty but ordered Mr. Mendez Benitez removed. *Id.* Mr. Mendez Benitez appealed to the BIA. *Id.* That appeal is still pending. *Id.* At no time during or after Mr. Mendez Benitez's arrest did ICE tell him why they were no longer allowing him to stay out of custody during his affirmative application process. *Id.* ¶ 5. He never saw or received any paperwork or reasons explaining this decision or the basis for his arrest. *Id.* ¶ 4. His affirmative VAWA petition is still pending today. *Id.* ¶ 7.

Pet. at 2-3.

In the instant Petition, Petitioner brings a Fifth Amendment Due Process claim on the grounds that "the decision to allow Mr. Mendez Benitez to apply for adjustment of status while out of custody created a liberty interest that Respondents violated by arbitrarily redetaining him." *Id.* at 3-6. Petitioner also brings a second claim on the grounds that Petitioner's warrantless arrest was not statutorily authorized and the Court should order his immediate release. *Id.* at 7-9. Prior to the instant Petition, Petitioner filed a previous habeas petition. *See, e.g., Victorino Mendez Benitez v. Christopher J. LaRose, et al.*, No. 26-cv-2126-LL-BJW*,* WL 1162759 (S.D. Cal. Apr. 29, 2026). The first habeas petition alleged that "as a member of the Bond Eligible Class, Mr. Mendez Benitez is entitled to consideration for release on bond under 8 U.S.C. § 1226(a)." *Id.*; *see also* Return at 2. This Court granted the Petitioner's first habeas petition on April 29, 2026, and ordered Respondents to provide a bond hearing to Petitioner by May 6, 2026. *Victorino Mendez*

*Benitez v. Christopher J. LaRose, et al.*, No. 26-cv-2126-LL-BJW, WL 1162759, ECF No. 5. Petitioner received a bond hearing before an immigration judge ("IJ") on May 05, 2026. *See* Return, Exhibit 2 (Order of the Immigration Judge). The IJ denied bond on the basis that the Petitioner is a flight risk and a danger to the community. *See* Return at 2; *see also* Exhibit 2 (Order of the Immigration Judge). Petitioner did not appeal the denial of bond by the IJ to the Board of Immigration Appeals. Return at 2.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III. DISCUSSION

Petitioner brings a Fifth Amendment Due Process claim on the grounds that "the decision to allow Mr. Mendez Benitez to apply for adjustment of status while out of custody created a liberty interest that Respondents violated by arbitrarily redetaining him." Pet. at 3-6. Petitioner also brings an alternative claim on the grounds that Mr. Mendez Benitez's warrantless arrest was not statutorily authorized and the Court should order his immediate release. *Id.* at 7-9. Petitioner seeks immediate release. *Id.* at 10-12.

Respondents argue that the Petition should be dismissed for abuse of the writ because Petitioner raises a claim now that could have been raised in his first habeas petition. ECF No. 7 at 2-5. Respondents also argue that this Court does not have jurisdiction because Petitioner failed to exhaust his administrative remedies. *Id.* at 6-9. Finally, Respondents

argue that Petitioner was served with an administrative warrant in compliance with the regulations. *Id.* at 10.

### A. Abuse of the Writ

For a habeas petition brought under 28 U.S.C. § 2241, "[t]he doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (internal quotation marks and citation omitted). Under this doctrine, "a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Id.* "Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders v. United States*, 373 U.S. 1, 18, 83 S. Ct. 1068, 1078, 10 L. Ed. 2d 148 (1963).

Petitioner contends that cause exists for this current claim because Petitioner was represented by different counsel in his first petition and the rapidly evolving law. ECF No. 8 at 6-8. Petitioner argues that when the first Petition was decided, over six months ago, "this Court and others were denying the type of relief that Mr. Mendez Benitez now seeks (violation of a liberty interest created by an affirmative application to USCIS)." *Id.* at 6. Accordingly, Petitioner argues that the arguments brought in the instant Petition were not "meaningfully available to [Petitioner] at the time his first petition was filed." *Id.*

The Court finds that upon these facts, Petitioner has shown cause for the failure to bring the due process claim alleging his unlawful arrest and detention in his earlier habeas petition. In December of 2025, the volume of habeas petitions filed in federal district courts regarding immigration detention had recently rapidly increased. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164 (9th Cir. 2026) ("The government's change in policy has resulted in detained aliens filing thousands of habeas petitions in federal courts across the country, seeking bond hearings and possible release from detention."). The law on

immigration detention was evolving and not clear in the absence of binding precedent on similar facts. *See Ozbalik v. LaRose*, No. 26-CV-4239-JES-SBC, 2026 WL 2455825, at *2 (S.D. Cal. Aug. 21, 2026) ("It is no secret that the number of habeas petitions in this District has risen rapidly in the past ten months, and that the law on such petitions was significantly less clear in December of 2025 than it is today."). Petitioner was represented by different counsel in his first Petition and the state of the law has changed since then. On these facts, the Court finds excusable cause for failing to raise the unlawful arrest claim in his earlier petitions and that prejudice in the form of unconstitutional detention may result if the Court does not consider it on the merits. *See Ozbalik*, 2026 WL 2455825, at *2 (finding excusable cause for the petitioner's prior failure to raise a claim that could have been raised due to inexperience and evolving law). Accordingly, the Court does not find it appropriate to dismiss the Petition under the doctrine of abuse of the writ and will consider the merits.

**B. Exhaustion**

Administrative exhaustion is also not required because further proceedings would not address the constitutional issues raised in the Petition and exhaustion would be futile. "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "An exception to the exhaustion requirement has been carved for constitutional challenges to . . . [DHS] procedures." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (quoting *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)). In the Petition, Petitioner asks this Court to consider Respondents' failure to comply with due process when they unlawfully arrested him at an immigration check-in on October 17, 2025, not the IJ's actions in 2026. Pet. at 2-7. "Any appeal Petitioner would make to the [BIA] would only be a review of the determination by the IJ at the bond hearing [and] would not address the propriety of Petitioner's re-detention, which concerns the constitutionality of an agency action prior to the bond hearing." *Venega-Maltez v. Semaia*, Case No. 5:26-cv-00525-JAK (AGRx), 2026 WL 846035, at *7 (C.D. Cal. Mar. 24, 2026) (citing 8 CFR § 1003.1(d)(3)). "Accordingly, given the inadequacy of available administrative remedies to redress Petitioner's irreparable harm,

the Court finds it appropriate to waive any prudential exhaustion requirement." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

**C. Merits**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

The essence of procedural due process is giving a person who is at risk of suffering a serious loss notice and an opportunity to be heard, in a meaningful manner and at a meaningful time. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Across the Ninth Circuit, district courts have applied the *Mathews* test in similar factual circumstances, finding a due process violation. As a threshold matter, the Court must first determine whether Petitioner has a protected liberty interest under the Due Process Clause. Even though Petitioner was not granted a form of affirmative parole by the government, the Government previously made an affirmative decision not to detain Petitioner pending his application for adjustment of status via VAWA was pending. Many courts have found that noncitizens in similar circumstances as Petitioner—by making their presence known to the government and the government then deciding *not* to detain them—have a protectable liberty interest. *See Millan Berrocal v. Mullin*, No. 26-CV-05391, 2026 WL 3020431, at *3 (S.D. Cal. Oct. 7, 2026) (finding that the petitioner had a liberty interest

because "for more than three years, the government has had 'meaningful knowledge of [the petitioner's] immigration status and circumstances,' taken affirmative actions in processing [the petitioner's] asylum application and granting work authorization, and still made the affirmative choice not to detain her") (quoting *James Orlando H.C. v. Chestnut*, No. 26-CV-03823-MWJS, 2026 WL 1917113, at *4 (E.D. Cal. July 3, 2026))); *Jemna v. Mullin*, No. 26-CV-02396-RBM-VET, 2026 WL 2936600, at *5 (S.D. Cal. Sep. 29, 2026) (finding that the government's "decision not to detain [the petitioner] while his asylum was pending created a liberty interest and his detention without notice or an opportunity to be heard thereby violated his due process rights"); *Zhou v. Janec[k]a*, No. 26-CV-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); *Gagik T. v. Chestnut*, No. 26-CV-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Judges of this district and others have repeatedly held . . . that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the [g]overnment's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process."); *Kharitonova v. Albarran*, No. 26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (finding a liberty interest from "[t]he government's decision not to detain [the petitioner] 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years'").

As such, the Court agrees with the reasoning of those courts. Here, Petitioner entered the United States in 2006. Pet. at 2. In 2018, his U.S. citizen wife submitted an I-130 Petition for Alien Relative on his behalf, which was approved. *Id.* In 2022, he submitted an affirmative petition for adjustment of status under the VAWA. *Id.* He received a work permit and a Social Security number. *Id.* Notwithstanding this, approximately one year ago, when Petitioner arrived at a document check appointment he was arrested without any notice or explanation. *Id.* Prior to his arrest, Respondents "had full knowledge of

Petitioner's identity, immigration status and location during the pendency of [his] immigration application[]" and, "with this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over [his] legal proceedings, all the while permitting [him] to remain free and at liberty while [his] applications were pending." *Zhou*, 2026 WL 2365550, at *5. Thus, the Court finds that Petitioner has a protected liberty interest in remaining free from detention.

Because Petitioner has a protected liberty interest, the Court also finds that all three factors in the *Mathews* test support a finding that Petitioner's detention without notification, reasoning, or an opportunity to be heard violated his right to due process. First, as discussed above, Petitioner has a significant liberty interest in remaining out of detention—as courts have held that noncitizens like Petitioner have a significant liberty interest in remaining free from immigration custody when they were permitted to live freely in the United States. *See Millan Berrocal*, 2026 WL 3020431, at *3; *Jemna*, 2026 WL 2936600, at *5; *Zhou*, 2026 WL 2365550, at *5. Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))). Thus, this first factor weighs in favor of Petitioner.

Second, the risk of an erroneous deprivation of such interest is high without a pre-deprivation hearing. "The crux of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Zhou*, 2026 WL 2365550, at *6 (quoting *Mathews*, 424 U.S. at 333) (internal citation and quotation marks omitted). "The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high." *Gagik T.*, 2026 WL 1837413, at *4; *see also Zhou*, 2026 WL 2365550, at *6 ("And where a petitioner has not received a hearing or other process prior to the revocation of [his] liberty, 'the risk of

an erroneous deprivation [of liberty] is high.'" (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025))). Thus, the second factor also weighs in favor of Petitioner.

Finally, the government's interest in detaining Petitioner without notice, reasoning, or a hearing, is low. *See Pinchi v. Noem*, 792 F. Supp. 1025, 1036 (N.D. Cal. 2025) ("[T]he government has articulated no legitimate interest that would support arresting [the petitioner] without a pre-deprivation hearing."). Here, Respondents have not offered any legitimate interest in detaining Petitioner without a pre-detention hearing, nor do they identify any material change in circumstance warranting Petitioner's detention. *See generally* ECF No. 6; *see also Pinchi*, 792 F. Supp. at 1036. Moreover, there is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh*, 803 F. Supp. at 1048)). Thus, this third and final factor weighs against Respondents.

Therefore, based on the *Mathews* test, the Court concludes that Petitioner's detention without notice or a pre-deprivation hearing violated the Fifth Amendment's Due Process Clause and renders his detention unlawful. Accordingly, the Court **GRANTS** the Petition.[1]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Having decided this Petition on due process grounds, the Court declines to address Petitioner's other grounds for relief.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Petitioner's instant Petition for a Writ of Habeas Corpus and **ORDERS** that Respondents immediately release Petitioner from custody, subject only to the conditions to which he was previously subjected. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: November 6, 2026

Honorable Linda Lopez
United States District Judge